**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**AT OWENSBORO**

DAVID WAYNE BAILEY                                                     PLAINTIFF

v.                                                         CIVIL ACTION NO. 4:16CV-P165-JHM

ARAMARK CORPORATION *et al.*                                         DEFENDANTS

## MEMORANDUM OPINION

This matter is before the Court on initial review of *pro se* Plaintiff David Wayne Bailey's

third,[1] fourth, and fifth amended complaints (DNs 13, 25 & 31) pursuant to 28 U.S.C. § 1915A.

For the reasons that follow, the action will be dismissed.

## I. SUMMARY OF CLAIMS

Plaintiff brings his action under 42 U.S.C. § 1983. In the third amended complaint

(DN 13), Plaintiff sues the following Defendants in their individual and official capacities:

(1) Aramark Correctional Services, LLC, food services contractor at GRCC; (2) Correct Care

Solutions, healthcare contractor at GRCC; (3) Rodney Ballard, Commissioner of the Kentucky

Department of Corrections (KDOC); (4) John Dunn, Ombudsman at KDOC; and (5) DeEdra

Hart, Warden at GRCC. The third amended complaint is not a model of clarity. Nevertheless, it

appears that Plaintiff is complaining primarily of two issues that are seemingly interrelated: a

medical diet and medical treatment.

---

[1] Plaintiff filed his original complaint pursuant to 42 U.S.C. § 1983 in the United States District
Court for the Eastern District of Kentucky. *See* Civil Action No. 5:16CV-343-JMH. He asserted various
federal constitutional and related state-law claims regarding his confinement at the Northpoint Training
Center. The Eastern District of Kentucky construed two handwritten documents as Plaintiff's first and
second amended complaints, severed them from the action, and transferred them to the Western District
of Kentucky because they complained of conditions of Plaintiff's confinement at the Green River
Correctional Complex (GRCC), which is located in this judicial district. Because the first and second
amended complaints were not filed on a § 1983 form and did not name any Defendants, the Court
directed Plaintiff to file a third amended complaint on a § 1983 complaint form and advised him that the
third amended complaint would supersede those earlier filed complaints.

Plaintiff reports that he was transferred to GRCC on September 8, 2016, and he alleges as follows:

> Since I arrived, I have determined that Aramark Daniel Powers contacted a dietician and implimented meals directed to one. I was denied by Aramark Powers the dietary information necessary to make an informed decision despite grievances to accept or reject proposed treatment diet, sometimes these meals fall between 40-140F, a.k.a. Danger Zone, bcs bacteria can grow within. Since informing Correct Care Solutions upon arrival and by request for bone density test (asking Dr Younger what can be done about painful cists), I was directed by physician to take vitamins (containing bovine allergen), not even somuchas over the counter treatment for pain, and I think he even laughed at little as he smirked, then said he would order some blood tests to determine why my body could not metabolize calcium. No one has contacted the canteen to give notice of my allergies, and I don't know beforehand what I may purchase. Warden DeEdra Hart hasnt responded to any of my notices of request for hearing, and grievance committee either. Commissioner Ballard's decision, and Dunn's inaction have been forarded to GRCC, and I need help from this court.

Plaintiff also alleges, "Blood tests have not been performed on me as directed, and the psychologist has not called me to join a group she had tol[d] me was starting up."

As relief, Plaintiff seeks monetary and punitive damages, "declarations," and the following injunctive relief: "make information available to me [and] treatments."

In the fourth amended complaint (DN 25), Plaintiff names Aramark as Defendant in the caption, and in the Parties section of the complaint, he names Mr. Dukes, Kitchen Supervisor at GRCC,[2] and "Mr. Ron," Medical Administrator at GRCC, in their individual and official capacities.[3]

---

[2] In a subsequently filed letter (DN 32), Plaintiff states that he "believes Heather M. Stephens to be Aramark Supervisor on charge at [GRCC] . . . for the purpose of any official claims in this case."

[3] In the Parties section of the complaint form, Plaintiff checks that he is suing those Defendants in their official capacities, but in the Relief section, he indicates that he seeks damages "in indiv. cap. Claim." The Court, therefore, construes the fourth amended complaint as asserting both individual- and official-capacity claims.

Plaintiff alleges:

> I was subjected to technical assault and battery by Aramark and [CCS] because Aramark failed to train it's supervisors to give a copy of Medical Nutritional Therapy to [CCS] . . . and that Medical Administrator was not trained to record what was being provided, as with all medical therapy, for his reference as information that a patient can have enough information to consent to, or reject treatment if an allergen level is low enough to reject treatment.

Plaintiff claims that Defendant Mr. Ron "refused to obtain a copy of my Medical Nutritional Therapy to provide for my copy or inspection." He indicates that he has "dairy restrictions" and claims that "[n]o purchase from commissary items have been monitored by medical staff to ensure products including, but not limited to 'MILK,' are not purchased by me, or restricted from purchase from club and commercial sales." He further claims that he stopped ordering eggs when he found out that "eggwhites were listed among allergen antibodies in my blood" and reports that "my cists have somewhat subsided, but still I experience painful pinprick suffering after eating bread, and I do not consume soy sauce either, as soy is listed as well. Peanut butter has in past only caused flem and inflamed my tonsiles slightly and lessening now."

As relief in the fourth amended complaint, Plaintiff seeks monetary and punitive damages and a referral to an allergy specialist for diagnosis.

Finally, in the fifth amended complaint (DN 31), Plaintiff lists Aramark as a Defendant in the caption and does not name any Defendant in the Parties section of the complaint. In the Statement of Claim(s) section of the complaint form, Plaintiff advises that in October 2017, "the Aramark staff in GRCC kitchen stopped giving [him] in this case the three slices of bread with every breakfast, lunch, and dinner, and did replace those with flour tortillas, not corn and no graham crackers either, but still haven't answered a grievance." He also claims that "Medical staff still doesn't acknowledge the obvious and sebaceous cyst(s), or request for bone density test

requested long ago." Plaintiff contends that "upon information and belief bread served at GRCC by Aramark contains milk, even the sliced bread served to plaintiff for over a year now. No fortified fruit drink served."

Plaintiff further contends that on October 30, 2017, in the GRCC kitchen the following occurred:

> at about 6:15 am Betty Hawkins had the plaintiff in this case put into handcuffs by officer Robert Norton when I told her my meal consists of more than 1 once of peanut butter.
>
> [] Betty Hawkins gave [him] 1 once of peanut butter; 4 flour tortillas; 2 small packets of apple jelly, and a bowl of dry cereal and told plaintiff that was within Dr. Slads general outline that I let them see. She copied it before when I had to show it to get them to stop contending many of the allergens it listed as not being allergens.
>
> [] Upon information and belief of Willis Diets, he found all the reciepes in relation to my diet in a drawer that other employees were unaware of.
>
> [] Norton called someone on the phone then let me go because he was not party.

As relief, Plaintiff seeks damages, an injunction directing Defendants to follow dietary directives, and declaratory judgments against all Defendants.

## II. **STANDARD OF REVIEW**

Because Plaintiff is a prisoner seeking relief against governmental entities, officers, and/or employees, the Court must review the complaint under 28 U.S.C. § 1915A. Under § 1915A, the trial court must review the complaint and dismiss the complaint, or any portion of the complaint, if the court determines that it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *See* § 1915A(b)(1), (2); *McGore v. Wrigglesworth*, 114 F.3d 601, 604 (6th Cir. 1997), *overruled on other grounds by Jones v. Bock*, 549 U.S. 199 (2007).

A claim is legally frivolous when it lacks an arguable basis either in law or in fact. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). The trial court may, therefore, dismiss a claim as frivolous where it is based on an indisputably meritless legal theory or where the factual contentions are clearly baseless. *Id.* at 327. In order to survive dismissal for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "[A] district court must (1) view the complaint in the light most favorable to the plaintiff and (2) take all well-pleaded factual allegations as true." *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (citing *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009) (citations omitted)). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555, 557).

Although courts are to hold *pro se* pleadings "to less stringent standards than formal pleadings drafted by lawyers," *Haines v. Kerner*, 404 U.S. 519 (1972), this duty to be less stringent "does not require us to conjure up unpled allegations," *McDonald v. Hall*, 610 F.2d 16, 19 (1st Cir. 1979), or to create a claim for a plaintiff. *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975). To command otherwise would require courts "to explore exhaustively all potential claims of a *pro se* plaintiff, [and] would also transform the district court from its legitimate advisory role to the improper role of an advocate seeking out the

strongest arguments and most successful strategies for a party." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

## III.  ANALYSIS

### A.  *42 U.S.C. § 1983*

"Section 1983 creates no substantive rights, but merely provides remedies for deprivations of rights established elsewhere." *Flint ex rel. Flint v. Ky. Dep't of Corr.*, 270 F.3d 340, 351 (6th Cir. 2001).  Two elements are required to state a claim under § 1983.  *Gomez v. Toledo*, 446 U.S. 635, 640 (1980).  "[A] plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law."  *West v. Atkins*, 487 U.S. 42, 48 (1988). "Absent either element, a section 1983 claim will not lie."  *Christy v. Randlett*, 932 F.2d 502, 504 (6th Cir. 1991).

### 1.  *Claims for Injunctive and Declaratory Relief*

A case, or portion thereof, becomes moot when events occur which resolve the controversy underlying it.  *Burke v. Barnes*, 479 U.S. 361, 363 (1987).  Generally, an inmate's release from prison or transfer to another prison moots his request for injunctive and declaratory relief.  *See Wilson v. Yaklich*, 148 F.3d 596, 601 (6th Cir.1998) (holding that a prisoner's claims for injunctive relief became moot after he was transferred to another facility); *Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996) ("[T]o the extent Kensu seeks declaratory and injunctive relief his claims are now moot as he is no longer confined to the institution that searched his mail."); *Lavado v. Keohane*, 992 F.2d 601, 605 (6th Cir. 1993) ("[T]he issue of declaratory relief became moot when Lavado was released from prison.") (citing *Preiser v. Newkirk*, 422 U.S. 395, 402-03

(1975)).  Because Plaintiff has been released from incarceration, his claims for equitable relief will be dismissed.

### 2.  *Claims for Damages*

#### a.  *Defendants Commissioner Ballard, Ombudsman Dunn, and Warden Hart*

Plaintiff sues Defendants Ballard, Dunn, and Hart in their individual and official capacities.  He alleges, "Warden DeEdra Hart hasnt responded to any of my notices of request for hearing, and grievance committee either.  Commissioner Ballard's decision, and Dunn's inaction have been forarded to GRCC, and I need help from this court."

"Official-capacity suits . . . 'generally represent [ ] another way of pleading an action against an entity of which an officer is an agent.'"  *Kentucky v. Graham*, 473 U.S. 159, 166 (1985) (quoting *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691 n.55 (1978)).  Because Defendants Ballard, Dunn, and Hart are officers of the Commonwealth of Kentucky, the claims brought against them in their official capacities are deemed claims against the Commonwealth of Kentucky.  *See Kentucky v. Graham*, 473 U.S. at 166.  State officials sued in their official capacities for money damages are not "persons" subject to suit under § 1983.  *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989).  Thus, because Plaintiff seeks money damages from state officers in their official capacities, he fails to allege cognizable claims against them under § 1983.  Additionally, the Eleventh Amendment acts as a bar to claims for monetary damages against these Defendants in their official capacities.  *Kentucky v. Graham*, 473 U.S. at 169.  Therefore, Plaintiff's official-capacity claims for damages against Defendants Ballard, Dunn, and Hart will be dismissed for failure to state a claim upon which relief can be granted and for seeking monetary relief from Defendants who are immune from such relief.

As to the individual-capacity claims, to the extent Plaintiff seeks to hold these Defendants responsible based on their supervisory positions, the doctrine of *respondeat superior*, or the right to control employees, does not apply in § 1983 actions to impute liability onto supervisors. *Monell*, 436 U.S. at 691; *Taylor v. Mich. Dep't of Corr.*, 69 F.3d 76, 80-81 (6th Cir. 1995); *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984). "Likewise, simple awareness of employees' misconduct does not lead to supervisor liability." *Leary v. Daeschner*, 349 F.3d 888, 903 (6th Cir. 2003) (citing *Lillard v. Shelby Cty. Bd. of Educ.*, 76 F.3d 716, 728 (6th Cir. 1996)). Rather, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676; *Loy v. Sexton*, 132 F. App'x 624, 626 (6th Cir. 2005) ("In order for supervisory liability to attach, a plaintiff must prove that the official 'did more than play a passive role in the alleged violation or showed mere tacit approval of the goings on.'") (quoting *Bass v. Robinson*, 167 F.3d 1041, 1048 (6th Cir. 1999)).

Plaintiff mentions Defendants Ballard, Dunn, and Hart with respect to their involvement in his grievances and/or their inaction. Supervisory liability, however, "must be based on active unconstitutional behavior and cannot be based upon 'a mere failure to act.'" *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999) (quoting *Salehpour v. Univ. of Tenn.*, 159 F.3d 199, 206 (6th Cir. 1998)). Further, "[t]he mere denial of a prisoner's grievance states no claim of constitutional dimension." *Alder v. Corr. Med. Servs.*, 73 F. App'x 839, 841 (6th Cir. 2003); *Grinter v. Knight*, 532 F.3d 567, 576 (6th Cir. 2008) ("The 'denial of administrative grievances or the failure to act' by prison officials does not subject supervisors to liability under § 1983.") (quoting *Shehee*, 199 F.3d at 300). A plaintiff's claim is against the subjects of his grievances, not those who merely decided whether to grant or deny the grievances. *See Skinner v.*

*Govorchin*, 463 F.3d 518, 525 (6th Cir. 2006) ("Skinner's complaint regarding Wolfenbarger's denial of Skinner's grievance appeal, it is clear, fails to state a claim."); *Lee v. Mich. Parole Bd.*, 104 F. App'x 490, 493 (6th Cir. 2004) ("Section 1983 liability may not be imposed simply because a defendant denied an administrative grievance or failed to act based upon information contained in a grievance."); *Nwaebo v. Hawk-Sawyer*, 83 F. App'x 85, 86 (6th Cir. 2003) (same); *Martin v. Harvey*, 14 F. App'x 307, 309 (6th Cir. 2001) ("The denial of the grievance is not the same as the denial of a request to receive medical care."). Plaintiff, therefore, fails to state a claim against Defendants Ballard, Dunn, and Hart in their individual capacity.

Consequently, all claims against those Defendants will be dismissed.

### b. *Defendants Aramark, CCS, Mr. Ron, and Dukes*

"Extreme deprivations are required to make out a conditions-of-confinement claim" under the Eighth Amendment. *Hudson v. McMillian*, 503 U.S. 1, 9 (1992). "Not every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey v. Wilson*, 832 F.2d 950, 955 (6th Cir. 1987). "[P]rison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'" *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quoting *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984)). "Implicit in this standard is the recognition that the plaintiff must allege that he has suffered or is threatened with suffering actual harm as a result of the defendants' acts or omissions before he can make any claim with an arguable basis in Eighth Amendment jurisprudence." *Wilson v. Yaklich*, 148 F.3d 596, 601 (6th Cir. 1998).

Plaintiff alleges that Defendant "Aramark failed to train it's supervisors to give a copy of Medical Nutritional Therapy to [CCS]" and that the CCS "Medical Administrator was not

trained to record what was being provided, as with all medical therapy, for his reference as information that a patient can have enough information to consent to, or reject treatment if an allergen level is low enough to reject treatment." The Court fails to see how these allegations rise to the level of a constitutional claim and will dismiss the claims against Defendants Aramark and CCS and against Defendants Mr. Ron and Dukes in their official capacities, which are actually claims against their employers, CCS and Aramark, respectively. *See, e.g.*, *Kentucky v. Graham*, 473 U.S. at 165-66; *Johnson v. Aramark*, No. 3:11CV-P517-M, 2012 WL 219503, at *2 (W.D. Ky. Jan. 25, 2012) ("Plaintiff's official-capacity claims against Defendants Geddes and Resnic are, therefore, actually claims against Aramark."), *aff'd*, 482 F. App'x 992 (6th Cir. 2012).

As to the individual-capacity claims against Defendants Mr. Ron and Dukes, the only allegation specific to Defendant Mr. Ron is Plaintiff's claim that Mr. Ron "refused to obtain a copy of my Medical Nutritional Therapy to provide for my copy or inspection." Plaintiff alleges no injury as a result of this refusal, and the Court finds that this allegation falls well short of stating a constitutional claim. Plaintiff lists Defendant Dukes in the Parties section of the complaint and otherwise fails to make any allegations against him. For these reasons, Plaintiff fails to state a claim upon which relief may be granted against Defendants Mr. Ron and Dukes in their individual capacities.

Even though Plaintiff does not name any other individual(s) as a Defendant regarding his claims about his food allergies and medical diet, the Court concludes that he, nevertheless, fails to state a claim upon which relief may be granted. Plaintiff previously filed a motion for preliminary injunction (DN 21), which the Court denied (DN 30). In his motion, Plaintiff reported that he suffers from "dietary related cists"; sought a preliminary injunction "to ensure

10

that he recieved proper medical nutritional therapy and qualified consultation"; and claimed, "the present suffering of the plaintiff and his potential bone loss and exposure to new allergens are enormous." In response (DN 26) to Plaintiff's motion, Defendants provided medical records and affidavits in support of their arguments against preliminary-injunctive relief. In an affidavit, supported by attached medical records, Dr. Lester L. Lewis, Jr., M.D., advised that he is currently the Regional Medical Director for the KDOC and personally saw Plaintiff on two occasions at GRCC in regard to his complaints of allergies. Dr. Lester averred as follows:

> 5.   Mr. Bailey was tested for possible allergies to a battery of substances on May 6, 2016. The test that was conducted was an IgE test used to reveal immediate hypersensitivity. Individuals who have a positive IgE test result experience itching, hives, swelling of the face and, in the most extreme cases, closing of the airways, Mr. Bailey's reaction to both beef and milk were in the "equivocal/low" range.[4] Despite the fact the test results were only in the "equivocal/low range," Mr. Bailey's diet was updated at that time to reflect allergies to beef and milk.
>
> 6.   On May 12, 2017, I saw Mr. Bailey to discuss the results of a food allergy test he underwent on April 12, 2017. Like the previous test, this was an IgE test. I explained to Mr. Bailey that the results for all of the substances tested, including milk, were negative.[5] Beef was not tested for in the April 12, 2017 test. Mr. Bailey told me that he had spoken with the Health Services Administrator ("HSA") regarding previous tests. I had also done this, and the two previous tests, including the May 6, 2016 test, were indeterminate. The results of the April 12, 2017 test were definitively negative, meaning that he did not show an allergy to milk.[6]
>
> 7.   I saw Mr. Bailey again on June 30, 2017 to discuss his allergies. Mr. Bailey at that time argued that he was allergic to foods on the allergy test despite the test results to the contrary. Regardless of my explanation of what an allergic reaction is, he insisted that he was right and I was wrong. He also complained that substances exuded from his skin that smell like the food he had eaten and that he had cysts on his face. I am unaware of any food allergy that results in the odor of food eaten exuding from the skin. I

---

[4] The April 2016 lab report reveals that Plaintiff was also tested for the following allergens and that those results were negative: wheat, corn, peanut, soybean, pork, chocolate/cacao, egg, and "Food Mix (Seafoods)."

[5] The May 2017 lab report reveals that Plaintiff was also tested for egg white, codfish, wheat, peanut, and soybean allergens and that the results were again negative.

[6] In the Progress Notes from the May 12, 2017, examination, Dr. Lewis indicated, "When I tried to explain [the test results, Plaintiff] started saying he gets lumps in his ears from foods. I further attempted to explain that this is not an allergy. When I explained what an alle[r]gic reaction was he jumped to saying he was allergic to sunlight."

am also unaware of any food allergy expressed as subcutaneous cysts. Mr. Bailey did not have any erythema or surface lesions on his face at that time. Mr. Bailey voiced his belief that most allergies are psychological. At that point, in light of Mr. Bailey's apparent unwillingness to accept the generally accepted medical definition of an allergy, I ended the conversation.

   8. My medical opinion, based upon a reasonable degree of medical probability, is that the first allergen test conducted on Mr. Bailey on May 6, 2016 indicated that Mr. Bailey might be allergic to beef and milk, but that the results were not conclusive. The second test conducted April 12, 2017 was unequivocal in showing that Mr. Bailey is not allergic to milk. Because beef was not tested for in the second allergen test, I am unable to state definitively whether or not Mr. Bailey is allergic to beef.

Dr. Lewis concluded that based upon Plaintiff's test results, he is unable to make any further recommendations regarding a change to Plaintiff's diet.

Defendants also attached an affidavit from Defendant Steven Dukes, Food Service Director for Aramark at GRCC. Defendant Dukes indicated that the GRCC Food Service Department/Aramark staff is aware of Plaintiff's "dietary needs and restrictions"; that Aramark has been instructed by the medical staff to provide Plaintiff with meals that are beef and dairy free; that Aramark has been accommodating and continues to accommodate Plaintiff's dietary needs for breakfast, lunch, and dinner by providing him with meals that are beef and dairy free; and that Aramark will accommodate any changes to Plaintiff's dietary needs that medical staff instructs it to make. As to Plaintiff's claim that he does not have a "menu specific to his treatment made available for his copy or inspection," Defendants state, "There is a general menu for inmates with beef and milk allergies. Thus, there is no menu specifically for Bailey. And because there is no specific menu for Bailey there is no menu to give him for 'copy or inspection'" under Ky. Rev. Stat. § 197.025.[7]

---

[7] Defendants cite to Ky. Rev. Stat. § 197.025(2), regarding restriction on access to inmate and facility records, which provides as follows:

> KRS 61.870 to 61.884 to the contrary notwithstanding, the department shall not be required to comply with a request for any record from any inmate confined in a jail or any facility or any individual on active supervision under the jurisdiction of the

Here, information contained in the record reveals that Plaintiff was tested for food allergens; that Dr. Lewis consulted with Plaintiff concerning the results; that in accordance with the test results, Plaintiff received meals that were beef and milk free, despite updated negative test results with respect to milk; that testing for peanut butter, soybeans, egg, and egg white were negative; that there was no "new long list of allergies that [the medical department] has refused to forward to the kitchen"; and that he was seen by both Dr. Lewis and Dr. Younger concerning his cysts. While Plaintiff wanted a second opinion or to be seen by a specialist, in the context of Eighth Amendment deliberate indifference claims, the Sixth Circuit has observed:

> [W]e distinguish between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment. Where a prisoner alleges only that the medical care he received was inadequate, federal courts are generally reluctant to second guess medical judgments. However, it is possible for medical treatment to be so woefully inadequate as to amount to no treatment at all.

*Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011) (internal quotations marks and citation omitted). In this case, Plaintiff received treatment, albeit not all the treatment he desired, and the Court does not wish to second guess his doctor's medical judgments. *See Colvin v. Burns*, No. 2:08-CV-276, 2010 WL 1963289, at *2 (E.D. Tenn. May 13, 2010) ("As long as the treatment actually afforded an inmate squares with constitutional standards, he has no right to demand second opinions, a certain physician, or a particular treatment."). Finally, having been released from GRCC, Plaintiff is no longer subject to the conditions about which he complains.

The Court, therefore, concludes that Plaintiff has failed to state an Eighth Amendment claim of deliberate indifference and will dismiss that claim.

---

department, unless the request is for a record which contains a specific reference to that individual.

### B. State-Law Claims

Plaintiff alleges assault and battery. Having determined that the federal § 1983 claims over which this Court has jurisdiction should be dismissed, this Court declines to exercise supplemental jurisdiction over any state-law claims Plaintiff may be trying to assert. *See* 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction."). Consequently, the state-law claims will be dismissed without prejudice.

For all the foregoing reasons, the Court will dismiss this action by separate Order.

Date: May 3, 2018

**Joseph H. McKinley, Jr., Chief Judge**
**United States District Court**

cc:     Plaintiff, *pro se*
        Defendants
        Counsel of Record
4414.005